The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| COLBY HUTTON, on his own behalf and on behalf of others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>O5 BNG, LLC, and 5 Star Apparel LLC,<br><br>      Defendants. | No. 2:26-cv-00976-JLR<br><br>DEFENDANTS' MOTION TO DISMISS COMPLAINT<br><br>NOTE ON MOTION CALENDAR:<br>June 1, 2026[1]<br><br>*ORAL ARGUMENT REQUESTED* |

---

[1] Based on the briefing schedule set by the Court's Order granting the Parties' Stipulated Motion. *See* Dkt. 11 at 4.

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(No. 2:26-cv-00976-JLR)

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL ALLEGATIONS ...............................................................................2

III.  LEGAL STANDARDS .........................................................................................3

    A.    Rule 12(b)(6) Motion to Dismiss. ...............................................................3

    B.    The Commercial Electronic Mail Act. ........................................................4

IV.   ARGUMENT.........................................................................................................4

    A.    Plaintiff Fails to State a CEMA Violation. .................................................4

        1.    Plaintiff Does Not Allege That He Received Eleven of the Twelve Emails Discussed in the Complaint. .............................................4

        2.    Plaintiff Does Not Sufficiently Allege 5 Star Knew or Had Reason to Know Plaintiff Resided in Washington. ...................................5

    B.    CEMA Violates the Dormant Commerce Clause. .....................................6

        1.    Plaintiff's CEMA Claim Fails for Regulating Wholly Extraterritorial Conduct. ..............................................................7

            a.    CEMA Is Invalid as Applied.............................................9

            b.    CEMA Is Facially Invalid.................................................9

            c.    The Washington Supreme Court Tacitly Acknowledgd CEMA Cannot Prohibit Wholly Out of State Conduct..................11

        2.    CEMA Excessively Burdens Interstate Commerce. ................................12

    C.    CAN-SPAM Preempts CEMA. ..................................................................13

        1.    CAN-SPAM Preempts CEMA in Its Entirety. ..........................................13

        2.    CAN-SPAM Preempts Plaintiff's Broad Application of CEMA. .............15

            a.    *Virtumundo* Applies Here. ..................................................15

            b.    Under Binding Ninth Circuit Law, CAN-SPAM Preempts Strict Liability Claims Like Plaintiff's..............17

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(No. 2:26-cv-00976-JLR) – i

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

(1)      Plaintiff Does Not Allege Materiality....................18

(2)      Plaintiff Does Not Allege Any Actual Harm.........19

D.      Because Plaintiff's CEMA Claim Fails, the Court Should Dismiss the CPA Claim That Relies on It. ..................................................................20

E.      Actual and Treble Damages Are Not Available. ...................................................20

V.      CONCLUSION.................................................................................................21

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(No. 2:26-cv-00976-JLR) – ii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Agnew v. Macy's Retail Holdings, LLC*,
2026 WL 764140 (W.D. Wash. Mar. 18, 2026) ....................................................................15

*Am. Librs. Ass'n v. Pataki*,
969 F. Supp. 160 (S.D.N.Y. 1997) .......................................................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................................................................3, 6

*Asis Internet Servs. v. Subscriberbase Inc.*,
2010 WL 1267763 (N.D. Cal. Apr. 1, 2010) ..............................................................14

*Ass'n for Accessible Meds. v. Bonta*,
766 F. Supp. 3d 1020 (E.D. Cal. 2025), *appeal docketed*, No. 25-1694 (9th Cir. Mar. 14, 2025) ..............................................................................................................................10

*Beyond Sys., Inc. v. Kraft Foods, Inc.*,
777 F.3d 712 (4th Cir. 2015) ...............................................................................13

*Booth v. Appstack, Inc.*,
2015 WL 1466247 (W.D. Wash. 2015).................................................................8

*Cascade Yarns, Inc. v. Knitting Fever, Inc.*,
2011 WL 3471476 (W.D. Wash. Aug. 8, 2011) ..................................................16

*Chen v. Sur La Table, Inc.*,
655 F. Supp. 3d 1082 (W.D. Wash. 2023)...........................................................20

*Daniels Sharpsmart, Inc. v. Smith*,
889 F.3d 608 (9th Cir. 2018) .................................................................................7

*Edgar v. MITE Corp.*,
457 U.S. 624 (1982)......................................................................................9, 11

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(No. 2:26-cv-00976-JLR) – iii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Gordon v. Impulse Mktg. Grp., Inc.*,

    375 F. Supp. 2d 1040 (E.D. Wash. 2005) .................................................................................15

*Gordon v. Virtumundo, Inc.*,

    575 F.3d 1040 (9th Cir. 2009) ................................................................................ *passim*

*Grizzly Gen. Contractors Corp. v. Kitsap Pub. Health Dist.*,

    2025 WL 81384 (W.D. Wash. Jan. 13, 2025), *aff'd*, 2026 WL 753173 (9th Cir. Mar. 17, 2026) ...........................................................................................................................21

*Gutierrez v. Converse Inc.*,

    2024 WL 2106952 (C.D. Cal. May 2, 2024) .............................................................................6

*Harrington v. Vineyard Vines, LLC*,

    2025 WL 3677479 (W.D. Wash. Dec. 18, 2025), *recons. denied*, 2026 WL 125134 (W.D. Wash. Jan. 16, 2026).................................................................................................15, 17

*Hartman v. United Bank Card, Inc.*,

    291 F.R.D. 591 (W.D. Wash. 2013) .........................................................................................8

*Healy v. Beer Inst., Inc.*,

    491 U.S. 324 (1989)................................................................................................ *passim*

*Hendrix ex rel. United States v. J-M Mfg. Co.*,

    76 F.4th 1164 (9th Cir. 2023) .................................................................................................19

*In re Hawaiian & Guamanian Cabotage Antitrust Litig.*,

    754 F. Supp. 2d 1239 (W.D. Wash. 2010), *aff'd*, 450 F. App'x 685 (9th Cir. 2011)................3

*Jerde v. Bylt*,

    2026 WL 415445 (W.D. Wash. Feb. 13, 2026).......................................................................15

*Kempf v. FullBeauty Brands Operations, LLC*,

    2026 WL 395677 (W.D. Wash. Feb. 12, 2026).............................................................5, 8, 15

*Leonard v. McMenamins Inc.*,

    2024 WL 4188974 (W.D. Wash. Sept. 13, 2024)....................................................................19

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(No. 2:26-cv-00976-JLR) – iv

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Ma v. Nike, Inc.*,

    2026 WL 100731 (W.D. Wash. Jan. 14, 2026)........................................................................15

*Malibu Media, LLC v. Doe*,

    2014 WL 2615351 (S.D. Fla. May 21, 2014) ...........................................................................6

*Martin v. CCH, Inc.*,

    784 F. Supp. 2d 1000 (N.D. Ill. 2011) ...................................................................................14

*Nat'l Collegiate Athletic Ass'n v. Miller*,

    10 F.3d 633 (9th Cir. 1993) ...................................................................................................12

*Nat'l Pork Producers Council v. Ross*,

    598 U.S. 356 (2023).............................................................................................................7, 9

*Nat'l Shooting Sports Found. v. Bonta*,

    718 F. Supp. 3d 1244 (S.D. Cal. 2024), *recons. denied*, 2025 WL 1012326 (S.D. Cal. 2025)

    .............................................................................................................................................10

*Paris v. Steinberg & Steinberg*,

    828 F. Supp. 2d 1212 (W.D. Wash. 2011).............................................................................21

*Pike v. Bruce Church, Inc.*,

    397 U.S. 137 (1970)..........................................................................................................6, 12

*Publius v. Boyer-Vine*,

    237 F. Supp. 3d 997 (E.D. Cal. 2017)......................................................................................8

*Rocky Mountain Farmers Union v. Corey*,

    730 F.3d 1070 (9th Cir. 2013) .................................................................................................7

*Russello v. United States*,

    464 U.S. 16 (1983)..................................................................................................................16

*S.D. Myers, Inc. v. City & Cnty. of San Francisco*,

    253 F.3d 461 (9th Cir. 2001) ...................................................................................................9

*Sprewell v. Golden State Warriors*,

    266 F.3d 979 (9th Cir. 2001), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) .....4

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(No. 2:26-cv-00976-JLR) – v

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*State Farm Mut. Auto. Ins. Co. v. Campbell*,

    538 U.S. 408 (2003)..............................................................................................................7

*Thompson v. United States*,

    604 U.S. 408 (2025)............................................................................................................16

*United States v. Corinthian Colls.*,

    655 F.3d 984 (9th Cir. 2011) ............................................................................................21

*Wash. State Grange v. Wash. State Republican Party*,

    552 U.S. 442 (2008)..........................................................................................................13

*Washington v. Ulta Salon, Cosms. & Fragrance, Inc.*,

    2026 WL 571122 (E.D. Wash. Feb. 27, 2026) ...........................................................8, 15

**State Cases**

*Adams v. King Cnty.*,

    164 Wn.2d 640 (2008) .......................................................................................................19

*Elcon Constr., Inc. v. E. Wash. Univ.*,

    174 Wn.2d 157 (2012) .......................................................................................................18

*Ferguson v. Friendfinders, Inc.*,

    94 Cal. App. 4th 1255 (2002) ..............................................................................................8

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,

    105 Wn.2d 778 (1986) .......................................................................................................20

*Keodalah v. Allstate Ins. Co.*,

    194 Wn.2d 339 (2019) .......................................................................................................20

*Martin v. Miller*,

    24 Wn. App. 306 (1979) ....................................................................................................18

*Mason v. Mortg. Am., Inc.*,

    114 Wn.2d 842 (1990) .......................................................................................................21

*Panag v. Farmers Ins. Co. of Wash.*,

    166 Wn.2d 27 (2009) .........................................................................................................20

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(No. 2:26-cv-00976-JLR) – vi

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Rosolowski v. Guthy-Renker LLC*,

    230 Cal. App. 4th 1403 (2014) ...............................................................................................14

*Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*,

    64 Wn. App. 553 (1992) ...........................................................................................................21

*St. Paul Fire & Marine Ins. Co. v. Updegrave*,

    33 Wn. App. 653 (1983) ...........................................................................................................21

*State v. Heckel*,

    122 Wn. App. 60 (2004) .............................................................................................................4

*State v. Heckel*,

    143 Wn.2d 824 (2001) .......................................................................................................11, 12

**Federal Statutes**

15 U.S.C. § 7701(a)(2) ...................................................................................................................16

15 U.S.C. § 7701(a)(8) ...................................................................................................................16

15 U.S.C. § 7701(a)(11) .....................................................................................................12, 13, 14

15 U.S.C. § 7704(a)(1) ................................................................................................................2, 16

15 U.S.C. § 7704(a)(2) ...........................................................................................................2, 16, 18

15 U.S.C. § 7706(f)(1) ...................................................................................................................17

15 U.S.C. § 7706(g)(1) ...................................................................................................................17

15 U.S.C. § 7707(b)(1) .................................................................................................2, 14, 16, 17

**State Statutes**

RCW 19.86.020 ..............................................................................................................................20

RCW 19.86.090 ..............................................................................................................................20

RCW 19.190.020 ...............................................................................................................................1

RCW 19.190.020(1) .......................................................................................................5, 9, 10, 13

RCW 19.190.020(1)(a) ...................................................................................................................15

RCW 19.190.020(1)(b) .....................................................................................................................4

RCW 19.190.020(2) .....................................................................................................9, 10, 13

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(No. 2:26-cv-00976-JLR) – vii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

RCW 19.190.030(1) ........................................................................................................20

RCW 19.190.040(1) ....................................................................................................5, 20

**Federal Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................................................1, 3

**Other Authorities**

Staff of H. Comm. On Energy & Utilities, Report On House Bill 2752 (Mar. 1998) .................11

Staff of S. Comm. On Energy & Utilities, Report On Senate Bill 6434 (Jan. 1998) ...................11

*Mislead*, MERRIAM-WEBSTER ...................................................................................17

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(No. 2:26-cv-00976-JLR) – viii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# I.    INTRODUCTION

In April 2025, the Washington State Supreme Court answered a certified question regarding the scope of Washington's Commercial Electronic Mail Act ("CEMA"). For years, courts had interpreted CEMA to require "truthfulness only about the advertising purpose of the e-mail." *Brown v. Old Navy*, 4 Wn.3d 580, 594 (2025). In *Brown*, Washington's Supreme Court gave CEMA new life, holding its prohibition on false or misleading subject lines is not limited to "information *about the commercial nature of the email*," but instead prohibits any statement in a subject line that could be construed as "false or misleading." *Id.* at 586, 596.

Since the Supreme Court's April 2025 decision in *Brown*, enterprising plaintiffs' attorneys have filed more than eighty putative class actions, each one seeking millions of dollars in statutory damages based on routine marketing emails that recipients expressly agreed to receive. Defendants O5 BNG, LLC and 5 Star Apparel LLC (collectively, "5 Star") are one such target. Plaintiff Colby Hutton ("Plaintiff") alleges he received a single promotional email sent by 5 Star, stating that a sale was ending soon. But Plaintiff does not allege that he read, opened, or relied upon the email. Under Plaintiff's theory, a retailer that gives its customers more time to take advantage of a discount faces company-ending statutory liability, without any regard to whether the customer ever even saw the email. This cannot be what CEMA requires. For the following reasons, 5 Star respectfully requests that the Court dismiss Plaintiff's claims with prejudice under Rule 12(b)(6).

*First*, Plaintiff fails to allege sufficient facts to support two crucial elements of a CEMA claim: (a) his receipt of each alleged email, and (b) 5 Star's reason to know Plaintiff's email address belonged to a Washington resident. *See* RCW 19.190.020. Plaintiff allegedly received only one of the twelve emails discussed in the Complaint and he alleges no fact indicating 5 Star knew or had reason to know Plaintiff was a Washington resident.

*Second*, CEMA is unconstitutional as applied and on its face, given it both directly controls and excessively burdens interstate commerce. Because Plaintiff does not allege he was in Washington when he received any email, applying CEMA here would unconstitutionally

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(No. 2:26-cv-00976-JLR) – 1

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

"directly control[] commerce occurring wholly outside the boundaries of [Washington] State." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989). And because out-of-state entities cannot feasibly weed out individuals currently located *or* residing in Washington to avoid Washington regulation, CEMA facially creates a de facto nationwide standard for commercial email, unconstitutionally and excessively burdening interstate commerce.

*Third*, CEMA, both in its entirety and as applied here, is preempted by the Controlling the Assault of Non-Solicited Pornography and Marketing Act ("CAN-SPAM"), which regulates commercial email nationwide. 15 U.S.C. §§ 7704(a)(1)–(2). CAN-SPAM preempts state laws, like CEMA, that expressly regulate the same issues, with a narrow exception for state laws that "prohibit[] falsity or deception" in commercial emails. 15 U.S.C. § 7707(b)(1). Under Ninth Circuit law, CEMA's strict liability framework that focuses solely on an email's subject line results in its preemption. Moreover, for Plaintiff's claim to survive, he must allege key elements of a traditional tort—including materiality and harm—to avoid preemption, which he fails to do.

*Fourth*, because Plaintiff's Consumer Protection Act ("CPA") claim rests entirely on his failing CEMA claim, the Court should dismiss both claims.

*Finally*, Plaintiff fails to allege any facts supporting his claims for actual and treble damages under both CEMA and the CPA.

## II.    FACTUAL ALLEGATIONS

O5 BNG, LLC is a Delaware limited liability company, with its principal place of business in New York. Dkt. 1 Ex. B ("Compl.") ¶ 13. 5 Star Apparel LLC is a New York limited liability company, with its principal place of business also in New York. Dkt. 15. 5 Star manages the marketing for certain licensees of the Quiksilver brand. Compl. ¶ 4.[2] Like many businesses, 5 Star periodically announces promotions through email marketing. *See generally id.* Plaintiff Colby Hutton takes issue with this common marketing practice, speculating that 5 Star sends

---

[2] The Parties stipulated that the Court may "construe all references in Plaintiff's Complaint to one Defendant to include both Defendants." Order Granting Agreed Motion to Add Party. Dkt. 1, Ex. A at 32–33.

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(No. 2:26-cv-00976-JLR) – 2

emails containing subject lines that "create a false sense of urgency in consumers' minds." *Id.* ¶ 6. He therefore brings a putative class action based on his receipt of a single email sent by 5 Star on July 6, 2025, which allegedly advertised that a sale would end soon. *See id.* ¶¶ 48, 67. Plaintiff seeks to represent a class of "Washington citizens" who received this July 6 email or any of three other emails that were allegedly sent on May 26, May 27, and September 1, 2025. *Id.* ¶ 70 & Ex. A. However, he does not allege *he* received any of those three other emails.[3] *See id.* ¶¶ 43–45, 53, 66–67.

Plaintiff speculates that 5 Star knows which email recipients are located or reside in Washington because 5 Star "may" (i) have "location information tied to email addresses when consumers make purchases from O5 through digital platforms," (ii) track IP addresses, (iii) purchase consumer data, or (iv) identify email recipients through marketing platforms. *Id.* ¶¶ 57–65. But Plaintiff does not allege that 5 Star actually knew or had reason to know that he was a Washington resident when he allegedly received the lone email at issue, nor does he allege that he was in Washington when he received it.

Plaintiff brings claims under CEMA and the CPA. *Id.* ¶¶ 81–97. Plaintiff seeks to certify a putative class and seeks an injunction, "actual or liquidated damages, trebled," costs, and attorneys' fees. *Id.* p. 15 ¶¶ A–D.

## III.    LEGAL STANDARDS

### A.    Rule 12(b)(6) Motion to Dismiss.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint can be lacking for one of two reasons: (i) absence of a cognizable legal theory, or (ii) insufficient facts under a cognizable legal claim." *In re Hawaiian*

---

[3] Plaintiff identifies seven email subject lines in total, only one of which he received and four of which are included in Exhibit A. *Compare* Compl. ¶¶ 43–55 & Ex. A, *with id.* ¶¶ 66–67. He alludes to five other emails without specifying their subject lines. *See id.* ¶¶ 42, 47, 52.

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(No. 2:26-cv-00976-JLR) – 3

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*& Guamanian Cabotage Antitrust Litig.*, 754 F. Supp. 2d 1239, 1244 (W.D. Wash. 2010), *aff'd*, 450 F. App'x 685 (9th Cir. 2011). The Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

### B.    The Commercial Electronic Mail Act.

CEMA is a Washington statute that imposes liability on any person who initiates or conspires to initiate the transmission of an email "from a computer located in Washington or to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b). CEMA applies only to email subject lines. *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1058 (9th Cir. 2009) ("CEMA 'does not regulate the body of the e-mail.'") (quoting *State v. Heckel*, 122 Wn. App. 60, 71 (2004)).

### IV.    ARGUMENT

### A.    Plaintiff Fails to State a CEMA Violation.

Plaintiff does not allege facts that plausibly show: (1) that he received eleven of the twelve emails discussed in the Complaint; or (2) that 5 Star knew or had reason to know Plaintiff was a Washington resident when sending the single email Plaintiff allegedly received. Plaintiff's CEMA claim should therefore be dismissed.

#### 1.    Plaintiff Does Not Allege That He Received Eleven of the Twelve Emails Discussed in the Complaint.

Plaintiff purports to represent a class of Washington citizens to whom 5 Star allegedly "sent or caused to be sent any email listed in Exhibit A during the Class Period." Compl. ¶ 70. Plaintiff only alleges receipt of one of the four emails in Exhibit A. *Compare id.* ¶¶ 43–55, 66–67, *with* Ex. A. He thus cannot assert CEMA claims based on the three remaining emails he does

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(No. 2:26-cv-00976-JLR) – 4

not allege he received. *Cf.* RCW 19.190.040(1) (providing for "[d]amages to the recipient").[4]

### 2. Plaintiff Does Not Sufficiently Allege 5 Star Knew or Had Reason to Know Plaintiff Resided in Washington.

Plaintiff does not plausibly allege 5 Star knew or had reason to know *Plaintiff's* email address belonged to a Washington resident, as required for his CEMA claim. RCW 19.190.020(1) (email must be sent from a computer in Washington or to an email address "the sender knows or has reason to know, is held by a Washington resident").[5] Instead, Plaintiff speculates that 5 Star should know *some* recipients of its emails reside in Washington from: (1) the "sheer volume" of its marketing emails; (2) customers' online purchases or opening emails; (3) tracking IP addresses; or (4) purchasing or requesting such data. *See* Compl. ¶¶ 57–65. This unsupported speculation says nothing about Plaintiff's status as a Washington resident and is insufficient to state a claim.

*First*, to assert a CEMA claim, Plaintiff must allege 5 Star knew or had reason to know that *Plaintiff's email address* belonged to a Washington resident. RCW 19.190.020(1). But Plaintiff fails to do so. And he makes no attempt to tie his conclusory allegation regarding the "sheer volume" of emails to *his own residency*. *See* Compl. ¶ 58.

*Second*, even assuming 5 Star can obtain IP addresses from online purchases or opening emails, Plaintiff does not allege *he* made any purchase from 5 Star or that such purchases would identify his email address as belonging to a Washington resident. Nor does he allege that he opened any email, let alone while using a Washington IP address. *See id.* ¶ 59.[6]

---

[4] Plaintiff does not allege he received eight additional emails that are discussed in the Complaint but not included in Exhibit A. Compl. ¶¶ 42–56, 66–67. Plaintiff specifies the subject lines for only three of those eight emails. *See id.* ¶¶ 42–56.

[5] Plaintiff does not allege any email at issue was sent from a computer located in Washington.

[6] By contrast, in *Kempf v. FullBeauty Brands Operations, LLC*, 2026 WL 395677, at *2 (W.D. Wash. Feb. 12, 2026), the Plaintiff specifically alleged that her domain registrant would identify her as a Washington resident and that she clicked links demonstrating her location in Washington.

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(No. 2:26-cv-00976-JLR) – 5

***Third***, even if 5 Star could obtain Plaintiff's IP address through a third-party vendor or other means and link it to his email, courts have repeatedly cast doubt on the reliability of using IP addresses for geolocation purposes. *See Gutierrez v. Converse Inc.*, 2024 WL 2106952, at *17 (C.D. Cal. May 2, 2024) (explaining IP addresses did not allow defendant "to make a determination as to where the chat users were located"); *Malibu Media, LLC v. Doe*, 2014 WL 2615351, at *2 (S.D. Fla. May 21, 2014) (declining to rely solely on plaintiff's assertions that jurisdiction and venue were appropriate based on the geolocation of defendant's IP address). Thus, even if Plaintiff had alleged that he clicked a link that would link his email address with his IP address and that the IP address would indicate he was located in Washington, that is not sufficient to demonstrate that 5 Star knew or should have known he was a Washington resident, as Plaintiff could have been traveling or using a VPN which misrepresented his location.

***Finally***, Plaintiff speculates that 5 Star "may" be able to purchase or obtain location information from "data brokers" or the registrants of email domains. Compl. ¶¶ 61–64. But Plaintiff fails to plausibly allege 5 Star receives or could receive residence data through these means. *See Iqbal*, 556 U.S. at 678 ("The plausibility standard … asks for more than a sheer possibility that a defendant has acted unlawfully."). And Plaintiff has not alleged that any of these third-party sources would have identified *his email address* as belonging to a Washington resident. For example, Plaintiff does not allege that the registrant of *his email address* domain: (1) would voluntarily provide 5 Star with information on his residency; or (2) had any information identifying Plaintiff's email address as belonging to a Washington resident.

Because Plaintiff fails to plausibly allege 5 Star knew, or had reason to know, that Plaintiff's email address was held by a Washington resident, his CEMA claim further fails.

### B.    CEMA Violates the Dormant Commerce Clause.

Courts recognize three types of dormant Commerce Clause challenges to a state statute: (1) when a statute directly controls commerce occurring outside of a state's boundaries; (2) when a statute excessively burdens interstate commerce, under the *Pike* balancing test; or (3) when a

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(No. 2:26-cv-00976-JLR) – 6

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

statute is enacted for the purpose of economic discrimination against other states. Plaintiff's CEMA claim fails under the first two tests.

### 1. Plaintiff's CEMA Claim Fails for Regulating Wholly Extraterritorial Conduct.

Plaintiff's CEMA claim violates the dormant Commerce Clause—as applied and on its face—because, by imposing liability based solely on the email recipient's residence, it applies to individuals located outside of Washington who received emails from commercial senders that were also located outside of Washington.

A state may not directly regulate conduct that takes place wholly outside of its borders, *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003), even with "some nexus" to that state, *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608, 615 (9th Cir. 2018). In a decision concerning the reach of the dormant Commerce Clause, the U.S. Supreme Court reaffirmed the longstanding principle that state laws may not "*directly* regulate[] out-of-state transactions by those with *no* connection to the State." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 374, 376 n.1 (2023). "[A] statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority and is invalid regardless of whether the statute's extraterritorial reach was intended by the legislature." *Healy*, 491 U.S. at 335–36. "States may not mandate compliance with their preferred policies in wholly out-of-state transactions…." *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1103 (9th Cir. 2013).

In *Sam Francis Foundation v. Christies, Inc.*, a California statute regulated art sales where "the seller resides in California *or* the sale takes place in California." 784 F.3d 1320, 1323 (9th Cir. 2015) (quoting Cal. Civ. Code § 986(a)). Because the statute imposed liability based on the *residency* of the seller, the Ninth Circuit determined that "the state statute facially regulates a commercial transaction that 'takes place wholly outside of the State's borders,'" and, thus, "violates the dormant Commerce Clause." *Id.* (quoting *Healy,* 491 U.S. at 336). The Ninth Circuit further explained:

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(No. 2:26-cv-00976-JLR) – 7

> [I]f a California resident has a part-time apartment in New York, buys a sculpture in New York from a North Dakota artist to furnish her apartment, and later sells the sculpture to a friend in New York, the Act requires the payment of a royalty to the North Dakota artist—even if the sculpture, the artist, and the buyer never traveled to, or had any connection with, California. We easily conclude that the royalty requirement, as applied to out-of-state sales by California residents, violates the dormant Commerce Clause.

*Id.* at 1323.[7]

The same is true for state statutes that directly regulate communications. In *Hartman v. United Bank Card, Inc.*, 291 F.R.D. 591, 599 (W.D. Wash. 2013), this Court declined to construe the Washington telemarketing statute as applying to calls "that were both initiated and received outside the State of Washington," because such an interpretation "would render the statute unconstitutional by virtue of the dormant Commerce Clause." *See also Booth v. Appstack, Inc.*, 2015 WL 1466247, at *14 (W.D. Wash. 2015) (same); *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1025 (E.D. Cal. 2017) (concluding that plaintiff likely to win dormant Commerce Clause challenge over California statute prohibiting out-of-state party from transferring certain information "even if [plaintiff] and the recipient have no connection to California or the transfer 'takes place wholly outside of the State's borders'") (quoting *Healy*, 491 U.S. at 336); *Am. Librs. Ass'n v. Pataki*, 969 F. Supp. 160, 163, 169 (S.D.N.Y. 1997) (noting that New York law prohibiting certain communications "represents an unconstitutional projection of New York law into conduct that occurs wholly outside New York").

Conversely, where courts have upheld anti-spam statutes facing constitutional challenges, they have done so only after construing those statutes as applying to emails that were sent from or received in the state. *See Ferguson v. Friendfinders, Inc.*, 94 Cal. App. 4th 1255, 1264–65

---

[7] While the court in *Kempf* rejected a similar challenge under the dormant Commerce Clause, that decision did not address *Sam Francis Freedom Foundation* and conflated the holding in *Nat'l Pork* that there is no per se ban on extraterritorial *effects* with the argument raised here regarding regulation of entirely extraterritorial conduct. 2026 WL 395677, at *6; *see also Washington v. Ulta Salon, Cosms. & Fragrance, Inc.*, 2026 WL 571122, at *5 (E.D. Wash. Feb. 27, 2026) (rejecting dormant Commerce Clause argument without addressing *Sam Francis Foundation*). Defendants in both cases are seeking certification for interlocutory review by the Ninth Circuit.

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(No. 2:26-cv-00976-JLR) – 8

(2002) (holding that state law regulating unsolicited email applied only to California residents receiving email through equipment located in California).

Here, CEMA does not limit its application to companies sending emails *from* Washington or emails *received in* Washington. Instead, it regulates emails sent "from a computer located in Washington or to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident…." RCW 19.190.020(1). Further compounding the issue, under CEMA, residency is keyed to whether "information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address," which may have outdated or inaccurate residency information. *See* RCW 19.190.020(2).

By imposing liability based on a recipient's current or past Washington residency—but not location—CEMA sweeps in commercial emails where both the sender and recipient are located outside of Washington, and is therefore unconstitutional both as applied and facially.

### a.   CEMA Is Invalid as Applied.

CEMA is invalid as applied because O5 BNG, LLC is incorporated in Delaware and located in New York, 5 Star Apparel LLC is incorporated and located in New York, and Plaintiff does not allege he was in Washington when he received the email at issue or that any email was sent from Washington. *See, e.g.*, Compl. ¶ 67. As a result, Plaintiff seeks to apply CEMA to prohibit emails that were both sent and received outside of Washington, which would "regulate directly … commerce wholly outside the State,"[8] and thus exceeds the "territorial limits of state authority" under the U.S. Constitution. *Nat'l Pork*, 598 U.S. at 376 n.1 (describing *Edgar v. MITE Corp.*, 457 U.S. 624 (1982)). Plaintiff's CEMA claim therefore rests on a reading of CEMA that violates the dormant Commerce Clause and should be dismissed.

### b.   CEMA Is Facially Invalid.

CEMA is also facially invalid, because, as drafted, "no set of circumstances exists under which [CEMA] would be valid." *S.D. Myers, Inc. v. City & Cnty. of San Francisco*, 253 F.3d 461, 467 (9th Cir. 2001) (quoting *United States v. Salerno,* 481 U.S. 739, 745 (1987)). CEMA

---

[8] *Edgar*, 457 U.S. at 643.

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(No. 2:26-cv-00976-JLR) – 9

does not limit its application to companies sending emails from Washington or emails *received in* Washington. Instead, it regulates emails sent "from a computer located in Washington or to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident…." RCW 19.190.020(1). CEMA thus imposes restrictions on a company incorporated in New York and based in New York that sent an email to a consumer in New York (for example) who is nonetheless a Washington resident, regardless of whether any conduct or alleged harm occurred in Washington. Additionally, by keying residency on information available from the registrant of the recipient's email address domain, RCW 19.190.020(2), CEMA purports to regulate emails sent to *former* Washington residents who failed to update their information with the appropriate internet domain registrants. For example, CEMA regulates the conduct of 5 Star when sending emails to a California resident who created an email address while attending college in Washington twenty years ago. CEMA thus exceeds the territorial limits of its authority.

And a statute is not immune to facial attack merely because the "statute *could* be applied to purely in-state commercial transactions, which a state may constitutionally regulate." *Nat'l Shooting Sports Found. v. Bonta*, 718 F. Supp. 3d 1244, 1257 (S.D. Cal. 2024), *recons. denied*, 2025 WL 1012326 (S.D. Cal. Mar. 31, 2025). Indeed, "by that logic, a state law policing economic activity *everywhere in the world*—including within the state—would be immune to facial attack." *Id.*

Rather, like the statute challenged in *Sam Francis Foundation*, CEMA regulates activities occurring out of state merely because they involve a Washington resident and therefore "facially regulates a commercial transaction that 'takes place wholly outside of the State's borders.'" 784 F.3d at 1323 (quoting *Healy*, 491 U.S. at 336). Although CEMA could be applied to purely in-state commercial activities, which a state may constitutionally regulate, the statute as written relies on a residency hook to regulate commercial transactions, and therefore results in regulating activities wholly outside of Washington. CEMA is therefore facially invalid. *See id.*; *see also Ass'n for Accessible Meds. v. Bonta*, 766 F. Supp. 3d 1020, 1033 (E.D. Cal. 2025) (invalidating

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

statute that "on its face may result in the extraterritorial regulation of settlement agreements in which none of the parties, the agreement, or the pharmaceutical sales have any connection with California" and limiting application to in-state settlement agreements), *appeal filed*, No. 25-1694 (9th Cir. Mar. 14, 2025).

### c.     The Washington Supreme Court Tacitly Acknowledged CEMA Cannot Prohibit Wholly Out of State Conduct.

Although the Washington Supreme Court rejected a dormant Commerce Clause challenge to CEMA more than two decades ago, in *State v. Heckel*, 143 Wn.2d 824 (2001), that decision is materially distinguishable. It also acknowledged that applying CEMA to prohibit conduct occurring wholly outside of Washington would pose a "jurisdictional question"—one the court expressly declined to answer. *Id.* at 839.

CEMA was enacted in 1999 and *Heckel* was decided in 2001, when most people received emails at their home computers via dial-up internet, meaning their residence was synonymous with the location at which they received emails. *See* House Bill Report H.B. 2752, at 2 (Mar. 1998) ("Many consumers connect to the Internet through … a dial-up connection to their computer server.").[9] The legislative history reflects that CEMA was intended to apply only to emails either sent to or received from a computer "located in Washington." *See* Senate Bill Report S.B. 6434, at 1 (Jan. 1998) ("Transmissions of unsolicited electronic mail (e-mail) messages *from a computer located in Washington* or *to a computer located in Washington*….") (emphasis added).[10] It is through this lens that the *Heckel* court rejected the dormant Commerce Clause challenge on the grounds that "there is no 'sweeping extraterritorial effect.'" *Heckel*, 143 Wn.2d at 838–39 (quoting *Edgar*, 457 U.S. at 642). But that logic became obsolete well over a decade ago, when access to email through smartphones and other mobile devices became

---

[9] Available online at: https://lawfilesext.leg.wa.gov/biennium/1997-98/Pdf/Bill%20Reports/House/2752.HBR.pdf?q=20250912085527 (last visited Apr. 9, 2026).

[10] Available online at: https://lawfilesext.leg.wa.gov/biennium/1997-98/Pdf/Bill%20Reports/Senate/6434.SBR.pdf?q=20250916135445 (last visited Apr. 9, 2026).

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(No. 2:26-cv-00976-JLR) – 11

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

ubiquitous, allowing everyday consumers to send and receive emails from outside their residence, home state or even country.

Moreover, the *Heckel* court did not rule out the possibility that CEMA might violate the dormant Commerce Clause if applied to wholly extraterritorial conduct. Although the court dismissed the mere "hypothetical of a Washington resident who downloads and reads the deceptive spam while in Portland or Denver," it did so because the "hypothetical mistakenly presumes that the Act must be construed to apply to Washington residents when they are out of state, a construction that *creates a jurisdictional question* not at issue in this case." *Id.* at 839 (emphasis added). In other words, *Heckel* tacitly acknowledged that if CEMA applies to emails sent and received wholly outside of Washington, it could exceed the limits of Washington state's authority.

### 2.    CEMA Excessively Burdens Interstate Commerce.

CEMA independently violates the dormant Commerce Clause by imposing stringent standards regulating commercial emails nationwide contrary to the intent of Congress, excessively burdening interstate commerce. In determining whether to strike down a law on this basis, courts evaluate (1) whether the state law attempts interstate regulation of a subject of national concern, and (2) the local benefits, if any, of the law. *See Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). Under both factors, CEMA cannot survive.

Congress made commercial email an issue of national concern by passing CAN-SPAM. *See* 15 U.S.C. § 7701(a)(11) ("[S]ince an electronic mail address does not specify a geographic location, it can be extremely difficult for law-abiding businesses to know with which of these disparate statutes they are required to comply."). CEMA's disparate requirements for commercial emails effectively forces out-of-state businesses to assume CEMA's standards apply to each and every email they send, thereby violating the Commerce Clause. *See Nat'l Collegiate Athletic Ass'n v. Miller*, 10 F.3d 633, 639 (9th Cir. 1993) (finding statute unconstitutional under the dormant Commerce Clause where it would force plaintiff to adopt Nevada's regulations for use in all states).

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(No. 2:26-cv-00976-JLR) – 12

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Although CEMA limits its application to email addresses "the sender knows, or has reason to know, [are] held by a Washington resident," RCW 19.190.020(1), the statute defines "knows" to require out-of-state businesses to ascertain residency by contacting "the registrant of the internet domain name contained in the recipient's electronic mail address." RCW 19.190.020(2). Requiring businesses to contact the registrant of the email domain to ascertain the residency for each and every email recipient before sending marketing emails is an onerous burden that cannot be dismissed as a "burden of noncompliance." *See Heckel*, 143 Wn.2d at 837. This is the kind of burden that CAN-SPAM seeks to avoid. *See* 15 U.S.C. § 7701(a)(11).

Additionally, Washington's local interest in independently regulating misleading email subject lines is comparatively minimal against the backdrop of an existing federal standard addressing the same conduct. While Washington may have a legitimate interest in regulating such conduct within its borders, Washington's legislature could draft a narrower statute encompassing emails sent from "a computer located in Washington" or to a computer "that the sender knows, or has reason to know" *is located in* Washington. *Contra* RCW 19.190.020(1).

Instead, 5 Star may be forced to apply CEMA's restrictions nationwide in order to comply. This is the very "projection of one state regulatory regime into the jurisdiction of another State" that the dormant Commerce Clause protects against. *Healy*, 491 U.S. at 337. Accordingly, CEMA is facially invalid under the dormant Commerce Clause. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008) (holding that a statute is facially invalid where, as here, "a 'substantial number' of its applications are unconstitutional, 'judged in relation to the statute's plainly legitimate sweep'") (citation modified) (citation omitted).

### C.    CAN-SPAM Preempts CEMA.

#### 1.    CAN-SPAM Preempts CEMA in Its Entirety.

Over 20 years ago, Congress enacted CAN-SPAM with the express purpose of "creat[ing] a national uniform standard regarding spam control." *Beyond Sys., Inc. v. Kraft Foods, Inc.*, 777 F.3d 712, 717 (4th Cir. 2015) (citing 15 U.S.C.§ 7701(a)(11)). Congress

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(No. 2:26-cv-00976-JLR) – 13

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

recognized that businesses faced numerous "disparate" state statutes targeting spam, such as CEMA, that "impose[d] different standards and requirements." 15 U.S.C. § 7701(a)(11). Because email addresses do "not specify a [recipient's] geographic location," it is "extremely difficult" for businesses like 5 Star to both identify and comply with a specific state's laws. *Id.*

In place of the "patchwork" of disparate state statutes, CAN-SPAM created a comprehensive "code of conduct to regulate commercial e-mail messaging practices," and "broadly preempt[ed] state regulation of commercial e-mail with limited, narrow exception." *Virtumundo*, 575 F.3d at 1048, 1061–63. CAN-SPAM excepts from preemption only state laws that "prohibit[] falsity or deception in any portion of a commercial electronic mail message or information attached thereto." 15 U.S.C. § 7707(b)(1). Considering CAN-SPAM's "text, structure, and legislative purpose," it is clear, as the Ninth Circuit announced, that CAN-SPAM's aim was to "save from preemption only 'statutes, regulations, or rules that target *fraud or deception*.'" *Virtumundo*, 575 F.3d at 1061–62 (quoting S. Rep. No. 108-102, at 21 (2003)). It was not designed to protect state laws aimed at penalizing emails with "at best, 'incomplete' or less than comprehensive information," or "technical" violations. *Id.* at 1064 (quoting *Gordon v. Virtumundo, Inc.*, 2007 WL 1459395, at *12 (W.D. Wash. May 15, 2007)).

Under this framework, CEMA cannot stand. CEMA is a strict liability statute imposing liability based solely on an email's subject line. CEMA, as the Washington State Supreme Court reinforced, does not consider the body of the email. *Brown*, 4 Wn.3d at 592. This myopic view ignores the body of the email which in most cases provides additional context that eliminates any potential falsity or deception. For this reason, similar statutes in other jurisdictions consider the email in its entirety—not just the subject line. *See, e.g.*, *Asis Internet Servs. v. Subscriberbase Inc.*, 2010 WL 1267763 at *5 (N.D. Cal. Apr. 1, 2010) ("A finder of fact may therefore reasonably consider the body of an email or a hyperlinked page in determining whether misrepresentations in the subject lines were actually material."); *Rosolowski v. Guthy-Renker LLC*, 230 Cal. App. 4th 1403, 1418 (2014) ("[W]e view an e-mail's subject line in conjunction with the body of the e-mail, rather than in isolation."); *Martin v. CCH, Inc.*, 784 F. Supp. 2d

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(No. 2:26-cv-00976-JLR) – 14

1000, 1007 (N.D. Ill. 2011) (recognizing circuits have held that allegations of "less than comprehensive information outside the body of an e-mail is at best a technical allegation that finds no basis in traditional tort theories and thus falls within CAN-SPAM's express preemption clause (and outside the exception).") (citation omitted). A subject line, by its nature, is very limited. It cannot—and is not designed to—provide the level of detail contained in an email body. CEMA's penalization of email subject lines containing incomplete information results in preemption.

### 2.   CAN-SPAM Preempts Plaintiff's Broad Application of CEMA.

Even if CEMA is not preempted in its entirety, Plaintiff's CEMA claim fails for the additional reason that CEMA, as applied here, is preempted.

### a.   *Virtumundo* Applies Here.

Several recent orders in this District and the Eastern District of Washington have held that CAN-SPAM does not preempt the subject-line provision of CEMA.[11] Respectfully, these decisions fail to accord proper weight to the Ninth Circuit's decision in *Virtumundo*. The decisions incorrectly conclude that *Virtumundo*'s preemption analysis—which held that CAN-SPAM preempted a claim brought under Subsection 1(a) of CEMA—can be disregarded because it was focused on a different section of CEMA which prohibits email header information that "misrepresents or obscures." RCW 19.190.020(1)(a).[12] But the Ninth Circuit's holding in

---

[11] *See Harrington v. Vineyard Vines, LLC*, 2025 WL 3677479, at *1 (W.D. Wash. Dec. 18, 2025), *recons. denied*, 2026 WL 125134 (W.D. Wash. Jan. 16, 2026); *Ma v. Nike, Inc.*, 2026 WL 100731, at *2 (W.D. Wash. Jan. 14, 2026); *Kempf*, 2026 WL 395677, at *4; *Jerde v. Bylt LLC*, 2026 WL 415445, at *1 (W.D. Wash. Feb. 13, 2026); *Ulta Salon, Cosms. & Fragrance, Inc.*, 2026 WL 571122, at *3–4; *Agnew v. Macy's Retail Holdings, LLC*, 2026 WL 764140, at *1 (W.D. Wash. Mar. 18, 2026).

[12] In holding CEMA's subject-line provision is not preempted by CAN-SPAM, the *Harrington* and *Kempf* courts followed the outdated, text-only analysis from *Gordon v. Impulse Mktg. Grp., Inc.*, 375 F. Supp. 2d 1040 (E.D. Wash. 2005). *See Harrington*, 2025 WL 3677479 at *1; *Kempf*, 2026 WL 395677 at *4. But the *Virtumundo* court rejected that analysis and attendant holding that Subsections 1(a) and 1(b) were not preempted, instead requiring additional scrutiny of the

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(No. 2:26-cv-00976-JLR) – 15

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Virtumundo* does not limit preemption to Subsection (1)(a) as the recent decisions suggest. The Ninth Circuit looked at CEMA in its entirety, discussing both deceptive subject lines and materially false and misleading header information. *Virtumundo*, 575 F.3d at 1062. It recognized the term "misrepresent"—the standard used in Subsection 1(a)—is so broad as to "extend CEMA's prohibitive reach" to a "vast array of non-deceptive acts and practices." *Id.* at 1059. For that reason, the court held Subsection 1(a) was preempted.

The same logic applies to Subsection 1(b), which prohibits "misleading" subject lines. Like the term "misrepresent," the term "misleading" reaches email subject lines that are neither false nor deceptive. *See*, *e.g.*, *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 2011 WL 3471476, at *4 (W.D. Wash. Aug. 8, 2011) ("When an advertisement is not literally false, but is misleading, 'proof that the advertising actually conveyed the implied message and thereby deceived a significant portion of the recipients becomes critical.'") (quoting *William H. Morris Co. v. Grp. W, Inc.,* 66 F.3d 255, 258 (9th Cir. 1995)); *see also Thompson v. United States*, 604 U.S. 408, 413 (2025) ("[F]alse and misleading are two different things. … [B]asic logic dictates that at least some misleading statements are not false.").

CAN-SPAM's statutory framework supports this distinction. Congress used the terms "false," "misleading," and "deceptive" separately and distinctly throughout CAN-SPAM. *See, e.g.*, 15 U.S.C. §§ 7701(a)(2), (8) (separately describing "fraudulent or deceptive" messages and messages with "misleading information in the … subject lines"); *id.* § 7704(a)(1) ("Prohibition of false or misleading transmission information"); *id.* § 7704(a)(2) ("Prohibition of deceptive subject headings"); *id.* § 7705 ("Businesses knowingly promoted by electronic mail with false or misleading transmission information"). And Congress chose *not* to include "misleading" in CAN-SPAM's savings clause. *Id.* § 7707(b)(1) (saving only state laws "prohibit[ing] falsity or deception"); *see generally Russello v. United States*, 464 U.S. 16, 23 (1983) ("'[W]here

underlying allegations, and holding Subsection 1(a) was preempted *based on the claims alleged*. *Virtumundo*, 575 F.3d at 1059, 1063–64.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'") (citation omitted). "False/falsity," "deception," and "misleading" thus cannot be viewed as synonymous, an assumption that is fatal to *Harrington* and the decisions that followed it. As the Ninth Circuit determined in *Virtumundo*, terms—like misleading, i.e., to "give a wrong impression"[13]—that could "extend CEMA's prohibitive reach and purport to regulate a vast array of non-deceptive acts and practices" render this claim preempted. *See Virtumundo*, 575 F.3d at 1062.

### b.    Under Binding Ninth Circuit Law, CAN-SPAM Preempts Strict Liability Claims Like Plaintiff's.

Regardless of whether *Virtumundo*'s conclusion applies equally to both subsections of CEMA, the Ninth Circuit's construction of CAN-SPAM's preemption clause is binding precedent. CAN-SPAM's narrow preemption exception allows states to regulate only "falsity or deception" in emails. 15 U.S.C. § 7707(b)(1). In *Virtumundo*, the Ninth Circuit grappled with the meaning of this preemption exception. It sought to preserve Congress's twin aims: (1) "to regulate commercial e-mail 'on a nationwide basis,'" and (2) "to save from preemption only 'statutes, regulations, or rules that target *fraud or deception*[.]'" *Virtumundo*, 575 F.3d at 1061– 1062 (quoting S. Rep. No. 108-102, at 21). For that reason, the Ninth Circuit recognized "[i]t would be logically incongruous to conclude that Congress endeavored to erect a uniform standard but simultaneously left states and local lawmakers free to manipulate that standard to create more burdensome regulation." *Id.* at 1063. To determine whether a state law is more burdensome than CAN-SPAM, the Ninth Circuit began by looking at what CAN-SPAM requires. *Id.*

To allege a CAN-SPAM violation for "deceptive subject headings," a party must—at a minimum—allege the sender (1) had "actual knowledge, or knowledge fairly implied on the

---

[13] *Mislead*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/mislead (last visited Apr. 9, 2026).

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(No. 2:26-cv-00976-JLR) – 17

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

basis of objective circumstances" that the statement at issue would be "likely to mislead a recipient, acting reasonably under the circumstances" (2) about "a material fact." 15 U.S.C. § 7704(a)(2). For *any* violation of CAN-SPAM, the party must also allege (3) the email "*adversely* affected" the recipient. *Virtumundo*, 575 F.3d at 1054 & n.12*; cf.* 15 U.S.C. §§ 7706(f)(1), (g)(1). With this backdrop in mind, the Ninth Circuit explained that to avoid preemption, a state law must—at a minimum—require proof of these same elements. Stated differently, a state law claim must advance certain elements of "traditional tort theories such as claims arising from fraud or deception," or at least consistent with those required to assert a claim under CAN-SPAM for "deceptive subject headings." *Virtumundo*, 575 F.3d at 1048, 1063.

But Plaintiff's claims "find no basis in traditional tort theories." *Id.* at 1064. To allow a claim like Plaintiff's to proceed under CEMA, without alleging these basic elements that CAN-SPAM requires, would impermissibly allow Washington to create a more burdensome, strict liability scheme for commercial entities. For the reasons explained below, Plaintiff's inability to allege materiality or an adverse effect is an inability to allege "deception or falsity," and further demonstrates that his CEMA claim cannot survive CAN-SPAM preemption.

### (1)    Plaintiff Does Not Allege Materiality.

CAN-SPAM requires the subject lines to be "material." *See Virtumundo*, 575 F.3d at 1062 (requiring more than "immaterial inaccuracies or omissions"). As the Ninth Circuit holds, any broader construction would "create 'an exception to preemption that swallows the rule and undermines the regulatory balance that Congress established.'" *Id.* at 1063 (quoting *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 356 (4th Cir. 2006)) (citation modified). And not only must the subject lines be material generally—they must have been material to *Plaintiff. See Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 167 (2012) (finding materiality absent because alleged misstatements were not material *to the plaintiff*); *Martin v. Miller*, 24 Wn. App. 306, 309 (1979) (analyzing whether "representations were material to the plaintiffs' decision to enter into a purchase and marketing agreement with the defendant");

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(No. 2:26-cv-00976-JLR) – 18

*Hendrix ex rel. United States v. J-M Mfg. Co.*, 76 F.4th 1164, 1169, 1173 n.5 (9th Cir. 2023) (similar). Plaintiff does not and cannot allege either.

Plaintiff does not allege he opened or read the lone email he received, let alone made a purchase based on it. At most, he alleges the subject line "create[d] a false sense of urgency" in the "minds" of hypothetical consumers. Compl. ¶ 6. Plaintiff therefore fails to allege materiality.

(2)     Plaintiff Does Not Allege Any Actual Harm.

For a private right of action under CAN-SPAM, the statute requires "a showing that the identified concerns are linked in some meaningful way to unwanted spam and, in turn, represent *actual harm*," i.e., an "adverse effect." *Virtumundo*, 575 F.3d. at 1048, 1054 (emphasis added). As the *Virtumundo* court explained, the requisite harm "must be of significance" and must be "something beyond the mere annoyance of spam.…" *Id.* at 1053–54. Plaintiff does not allege any such harm.

Instead, Plaintiff alleges the emails at issue violated his "right to be free from such annoyance and harassment under CEMA." Compl. ¶ 66. These allegations fail to describe any "actual harm" under CAN-SPAM. *See Virtumundo*, 575 F.3d. at 1054 (explaining cognizable "harm" under CAN-SPAM must be "something beyond the mere annoyance of spam," such as "operational or technical impairments and related financial costs attributable to unwanted commercial e-mail"). And, with respect to the alleged injury due to a false sense of urgency, Plaintiff does not allege he ever made any purchase in response to any email subject line, nor does he allege any subject line induced him to take any detrimental action.

Similarly, at common law, tort claims generally require some "cognizable injury [that] could have resulted from" the challenged conduct. *Leonard v. McMenamins Inc.*, 2024 WL 4188974, at *10 (W.D. Wash. Sept. 13, 2024) (dismissing breach of fiduciary duty and negligence claims relating to data breach where plaintiff failed to show actual damages); *Adams v. King Cnty.*, 164 Wn.2d 640, 662 (2008) (requiring "'damages suffered by the plaintiff'" to establish a fraud claim) (citation omitted). By asserting a claim without alleging any cognizable

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(No. 2:26-cv-00976-JLR) – 19

harm, Plaintiff seeks to use CEMA to impose a strict liability standard for sending commercial emails, which is grossly incongruous with CAN-SPAM.

**D.    Because Plaintiff's CEMA Claim Fails, the Court Should Dismiss the CPA Claim That Relies on It.**

Finally, because Plaintiff's CEMA claim fails, the Court should dismiss Plaintiff's claim under the CPA.

The CPA prohibits unfair methods of competition and unfair or deceptive acts in trade or commerce. RCW 19.86.020. A CEMA violation may constitute a *per se* CPA violation. RCW 19.190.030(1). If no *per se* CPA violation exists, a plaintiff must plead a standalone claim by alleging (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) which affects the public interest, and (4) causes (5) injury to the plaintiff's business or property. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784–85 (1986). Plaintiffs "must establish all five elements." *Id.* at 793. Personal injuries like mental distress, embarrassment, or inconvenience do not satisfy the CPA's injury requirement. *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 57 (2009). Instead, a plaintiff must specifically show injury to their "business or property." *Id.*

Plaintiff does not allege any of the elements of an independent CPA claim. *See Keodalah v. Allstate Ins. Co.*, 194 Wn.2d 339, 349–50 (2019). Instead, he predicates his CPA claim on the alleged CEMA violation. *See* Compl. ¶¶ 88–97. Because Plaintiff fails to allege a CEMA violation, his CPA claim also fails. *See, e.g.*, *Chen v. Sur La Table, Inc.*, 655 F. Supp. 3d 1082, 1093 (W.D. Wash. 2023) (CPA claim properly dismissed where plaintiff failed to state a CEMA violation); *Virtumundo*, 575 F.3d at 1065–66 (same).

**E.    Actual and Treble Damages Are Not Available.**

CEMA provides for statutory damages or actual damages, whichever is greater. RCW 19.190.040(1). The CPA provides for treble damages "not to exceed three times the actual damages sustained." RCW 19.86.090. Although Plaintiff seeks both statutory and actual damages (trebled), he fails to allege any facts suggesting he sustained actual damages. *See, e.g.*,

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(No. 2:26-cv-00976-JLR) – 20

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Compl. ¶ 66 (alleging emails violated Plaintiff's "right to be free from such annoyance and harassment" without explaining when, how, or why he experienced annoyance or harassment). Accordingly, any claim for actual damages should be dismissed. *See Grizzly Gen. Contractors Corp. v. Kitsap Pub. Health Dist.*, 2025 WL 81384, at \*7 (W.D. Wash. Jan. 13, 2025) ("The complaint is nothing more than a 'formulaic recitation' of the elements of a CPA [claim] devoid of any factual fodder. Its failure to … allege how it was injured … is fatal to [the] claim."), *aff'd*, 2026 WL 753173 (9th Cir. Mar. 17, 2026); *see also Paris v. Steinberg & Steinberg*, 828 F. Supp. 2d 1212, 1217 (W.D. Wash. 2011) (similar).

Plaintiff's failure to plausibly allege any actual damages also precludes treble damages. "The case law is clear that treble damages may only be based upon actual damages." *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 64 Wn. App. 553, 565 (1992); *see also Mason v. Mortg. Am., Inc.*, 114 Wn.2d 842, 855 (1990); *St. Paul Fire & Marine Ins. Co. v. Updegrave*, 33 Wn. App. 653, 660 (1983). Thus, the Court should also dismiss Plaintiff's request for treble damages.

### V.  CONCLUSION

For the above reasons, the Court should dismiss the Complaint with prejudice, as Plaintiff cannot cure the fundamental defects in his claims. *See United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011).

//

//

//

//

//

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(No. 2:26-cv-00976-JLR) – 21

DATED this 9th day of April, 2026.

DAVIS WRIGHT TREMAINE LLP
*Attorneys for O5 BNG, LLC and 5 Star Apparel LLC*


By */s/ Lauren B. Rainwater*
    Lauren B. Rainwater, WSBA #43625
    Rachel Herd, WSBA #50339
    Bryan Taylor, WSBA #55642
    Joshua Peck, WSBA #64328
    920 Fifth Avenue, Suite 3300
    Seattle, WA 98104-1610
    Tel: 206-622-3150
    Fax: 206-757-7700
    E-mail: laurenrainwater@dwt.com
            rachelherd@dwt.com
            bryantaylor@dwt.com
            joshpeck@dwt.com

*I certify that this memorandum contains 7,317 words, in compliance with the Local Civil Rules.*

DEFENDANTS' MOTION TO DISMISS COMPLAINT
(No. 2:26-cv-00976-JLR) – 22